## Cutler Estate

*Wisler, Pearlstine, Talone & Gerber*, for accountants.

*Roger B. Reynolds*, for remainderman.

TAXIS, P. J., July 9, 1956.—The first account of Allen Cutler, trustee under deed dated October 30, 1953, and modified on September 21, 1954, as stated by Esther Heitzer and Jack Cutler, executors under the will of Allen Cutler, deceased, was examined and audited by the court on February 6, 1956. . . .

The account shows a balance of income for distribution of $133.19, consisting of cash.

The reason or purpose of the filing of the account now before the court is the death of Allen Cutler, trustee, on November 19, 1954.

The estate accounted for is not subject to the payment of transfer inheritance tax.

The trust arises by deed dated October 30, 1953, conveying premises 5921 Old York Road, Philadelphia, for a consideration of $14,500 to Allen Cutler, as trustee for Minnie Cutler, his mother. On the same date, Allen Cutler, trustee, executed a bond and mortgage of $9,000 payable within 12 years with interest at six percent, monthly payments of principal and interest being $87.74, together with one twelfth of the annual taxes. Garfield Federal Savings and Loan Association was the mortgagee. The real estate was the only asset of the trust.

The terms of the trust are:

(1) "To provide a home for Minnie Cutler during her lifetime.

(2) "To collect any rentals from said property and *after deduction of all expenses and carrying charges* of said property, to pay the net proceeds therefrom to Minnie Cutler during her lifetime in at least quarterly instalments. . . . (Italics supplied.)

(4) "Upon the death of Minnie Cutler, the remainder shall go to Allen Cutler, his heirs, successors or assigns free and clear of the terms of this trust."

At the time of the audit an "Agreed Statement of Facts" was submitted to the court executed by Minnie Cutler, the life tenant, and Flora Cutler, the remainderman.* Paragraphs 4, 5, and 6 of this argeement provide as follows:

"4. Allen Cutler, as trustee, maintained an account at the Industrial Trust Company in which he deposited only rentals from the property, and from which he paid the expenses and interest and amortization of mortgage for premises 5921 Old York Road. Upon his death there was a balance in this account of $925.79. No sums of money were paid from this account to Minnie Cutler in accordance with the terms of the trust during his lifetime.

"5. Allen Cutler died on November 19, 1954, survived by Minnie Cutler, his mother, and Flora Cutler, his widow.

"6. Since the death of Allen Cutler, this property has been administered by his executors. There is a dispute at the present time between the life tenant and the remainderman as to the meaning of the words

---

* Paragraph 7 of this statement also reserved the right of the signatories "to offer any additional testimony or exhibits at the time of the audit . . .". Mrs. Minnie Cutler did not, however, offer any additional testimony.

'carrying charges' in both deeds. It is the contention of the life tenant that the amortization of the mortgage should be chargeable to the remainderman. It is the contention of the remainderman that the amortization of the mortgage should be taken out of income received from the property, and that the life tenant is to receive any balance remaining after expenses, taxes, interest and amortization are paid."

The real estate is productive, thus section 11(1) of the Principal and Income Act of July 3, 1947, P. L. 1283, has no application.

The mortgage in question was a direct reduction mortgage payable on a monthly basis. The account shows that nine monthly payments on account of principal of the mortgage have been made. The exact amount allocable to amortization of the mortgage principal, however, is not clear since the monthly payments of $87.74 are not itemized.

At the time of audit and hearing the remainderman called Merton J. Matz, Esq., the scrivener of the trust deed. He testified that in his discussion with Allen Cutler, the deceased settlor-trustee, "it was indicated the carrying charges were to include, as we normally interpret it, in our office, the payment, not only of interest on the mortgage, but also of the amortization as well".

The remainderman also called Milton Blaker, assistant treasurer of the West Philadelphia Federal Savings and Loan Association, who testified that he has participated in approximately 10,000 settlements for this and other associations during the past five years, that it was his opinion that the custom in Philadelphia is to include principal as well as interest, taxes and water rent in the term "carrying charges" when referring to direct reduction mortgages which are paid on a monthly basis.

The general rule is well stated in Kramer's Estate,

59 D. & C. 329, at 333: "When trust property encumbered by a mortgage comes to a trustee, who holds said property for a life tenant and remainderman, and testator makes no special provision concerning the payment of interest and principal of the mortgage obligation, testator is deemed to have intended that life tenant bear the interests, carrying charges, taxes, etc., and remainderman the principal due on the mortgage.

"If this be so the trustee should pay interest installments out of the rentals and cancel the principal of the mortgage debt out of the capital of the trust. Likewise, if the principal of a mortgage has been borne by life tenant out of the rentals, or if the trustee paid a portion of the rentals on the mortgage debt, then life tenant is entitled to repayment of his portion of the rentals, so applied by the trustee on the mortgage debt, out of the capital of the trust."

In 4 Bogert, Trusts and Trustees, §802, page 119, it is said: "If the settlor makes no special provision about the payment of interest and principal of this obligation [a mortgage], he is deemed to have intended that the life tenant is to bear the interest charges and the remainderman the principal due on the mortgage."

It is seen that the words "carrying charges" ordinarily include such annual expenses as real estate taxes, insurance, repairs, interest on the mortgage, etc., but ordinarily do not include within their meaning amortization of the mortgage principal.

The question then becomes whether, in the instant case, the record establishes that settlor intended a rule, other than this general rule as stated, be applied, or, more particularly, did settlor intend that the words "carrying charges" should include amortization of principal.

In addition to the testimony set forth above showing that settlor so intended amortization payments to

come out of the annual rentals, the additional fact appears that he made nine such payments in his lifetime from trust income, evidencing by his performance and conduct that he intended mortgage principal be amortized on a monthly basis from income.

After a full and careful consideration of the evidence and the arguments of counsel, it is the conclusion of the court that in the somewhat unusual circumstances of this trust that settlor intended the words "carrying charges" to include amortization of the mortgage principal by monthly payments thereon.

In view of this conclusion it is unnecessary to comment on the scope or effect of a release entered into by Minnie Cutler with the remainderman.

The net balance of income for distribution is awarded to Minnie Cutler, life tenant.

The account is confirmed, and it is ordered and decreed that Esther Heitzer and Jack Cutler, executors under the will of Allen Cutler, deceased trustee, as aforesaid, forthwith pay the distribution herein awarded.

And now, July 9, 1956, this adjudication is confirmed nisi.